# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-25-00833-CV
NO. 03-25-00835-CV

F.M.H. a/k/a M.D.H. a/k/a M.F.H.D. a/k/a M.F.D.-H., Appellant

v.

Texas Department of Family and Protective Services, Appellee

FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-FM-24-007468,
THE HONORABLE AURORA MARTINEZ-JONES, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Following a bench trial, the district court terminated the parental rights of F.M.H. a/k/a M.D.H. a/k/a M.F.H.D. a/k/a M.F.D.-H. (Mother) to her three-year-old daughter S.M.H. ("Sarah") and her eleven-year-old son N.M. ("Nick").[1] The district court issued a separate decree of termination for each child, and Mother filed a notice of appeal from each decree.[2]

In each appeal, Mother's court-appointed counsel has filed an *Anders* brief concluding that the appeal is frivolous and without merit. *See Anders v. California*, 386 U.S. 738, 744 (1967); *In re P.M.*, 520 S.W.3d 24, 27 & n.10 (Tex. 2016) (per curiam) (approving use

---

[1] For the children's privacy, we refer to them using pseudonyms and to their parents and other relatives by their familial relationships to each other. *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8.

[2] The appeal involving Sarah was docketed under appellate cause number 03-25-00833-CV, while the appeal involving Nick was docketed under appellate cause number 03-25-00835-CV.

of *Anders* procedure in appeals from termination of parental rights). Each brief meets the requirements of *Anders* by presenting a professional evaluation of the record and demonstrating why there are no arguable grounds to be advanced on appeal. *See* 386 U.S. at 744; *Taylor v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 641, 646-47 (Tex. App.—Austin 2005, pet. denied). In each cause, counsel has certified to this Court that he has provided Mother with a copy of the *Anders* brief and informed her of her right to examine the appellate record and to file a pro se brief. No pro se brief has been filed.

Upon receiving an *Anders* brief, we must conduct a full examination of the record to determine whether the appeal is wholly frivolous. *See Penson v. Ohio*, 488 U.S. 75, 80 (1988); *Taylor*, 160 S.W.3d at 647. The record reflects that in June 2024, the Texas Department of Family and Protective Services (the Department) received a referral alleging the neglectful supervision of Sarah and Nick by Mother. According to the removal affidavit for Nick, a copy of which was admitted into evidence at trial, Mother was seen "going from hotel to hotel and hanging out at random locations partaking in drug use," specifically "crack cocaine out of a pipe daily and around the children." The report further alleged that Mother "often leaves the children unsupervised for hours, where [Nick] is seen caring for his 1-year-old sister, [Sarah]," and "the children are often roaming the streets either late at night or early in the morning, while [Mother] is doing drugs." One day, Nick was "found by a neighbor" in Mother's apartment complex, and the neighbor contacted the Department. "The Department waited for hours for [Mother] or another family member to arrive, but no one arrived to meet with the Department or pick up [Nick]." The Department was eventually able to speak with Mother by phone, but she told the Department that she would not be returning to the residence and gave the Department permission to remove Nick. The Department did not remove Sarah from Mother's care at that time.

In October 2024, the Department received another referral alleging the neglectful supervision of Sarah by Mother. According to the removal affidavit for Sarah, a copy of which was admitted into evidence at trial, Sarah was staying with a family friend at the time, and Mother and an "unknown person" (possibly Sarah's father) had come to the friend's house, "attempted to yank [Sarah] out of the car, and the unknown person put a gun on [the friend's] head and told her to give them [Sarah]. According to the report, [Mother] is a drug addict and was believed to be under the influence at the time of the incident." Three days later, Mother returned to the friend's home, again "trying to get [Sarah] back." This time, Mother "attempted to assault [the friend]," "began to break windows in the home," and "was observed to be heavily under the influence of narcotics or alcohol." After this incident, Mother was arrested and jailed in the Travis County Correctional Complex, and Sarah was removed from Mother's care.

For each child, the Department filed a suit affecting the parent-child relationship, seeking the termination of Mother's parental rights.[3] The suits were consolidated for trial, which occurred over two days in August and September 2025. Mother did not personally appear at trial but was represented by counsel. Department caseworker Daniel Clayton and CASA volunteer Garrett Oliveira testified. Documentary evidence admitted at trial included the removal affidavit for each child and temporary orders in each case.

Caseworker Clayton testified that to obtain the return of the children, Mother had been ordered to engage in therapy, complete a psychological evaluation, complete domestic-violence (DV) classes, complete an Outreach, Screening, Assessment, and Referral (OSAR) for drug use, and complete drug testing. To assist Mother, Clayton "made two referrals

___

[3] The Department also sought and obtained the termination of the parental rights of the father of each child. Sarah's alleged father, F.M., could not be located, and Nick's father is unknown.

for therapy," "made a referral for SAFE for DV classes," made "at least one referral to Siebert Psychological so she could get a psychological evaluation done," and "sent her to a bunch of drug tests that we never received any response from." According to Clayton, Mother "engaged in no services" and "did not submit to any drug tests." As a result, "[n]one of the [Department's] concerns have been alleviated." Additionally, Mother "has never visited with [Sarah] because she was never in consistent contact" with the Department, which made it difficult for the Department to schedule visits, and she had visited Nick in person only one time during the case, although she did have multiple phone calls with him.

Clayton further testified that Nick had been placed with his maternal aunt and maternal step-grandfather beginning in August 2024 and that this was his placement throughout the case. According to Clayton, Nick "has been doing great there. He has been able to go to school. He has been able to get his therapy, though it has lapsed a couple times. But it has been really good. [Nick] says that he enjoys living there, and he's safe." Clayton added that the placement wanted to be Nick's permanent caregivers and that "they would do what they needed to do to make sure that they were—they were there for him and be permanency for him."

Clayton testified that Sarah had been placed with the family friend who had been taking care of her at the time Sarah was removed from Mother. Clayton recounted that the family friend "was doing a good job taking care of [Sarah] and had a bond with her already established. And so we felt like it was—it was appropriate at that time to—to maintain that bond and that caregiving." Additionally, the friend "has been dedicated to taking care of [Sarah] and has wished to adopt or take permanent managing conservatorship of [Sarah]." Clayton explained that the children were not placed together because Nick's placement had informed the Department that "they did not think that they could take care of both [Nick] and [Sarah] due to

their work schedules and being able to take care of a younger child." However, Clayton testified that the children had been able to visit each other and maintain a relationship since their removal from Mother's care, and the Department has "empowered the families to try to maintain contact and have visits there for themselves."

Clayton opined that termination of Mother's parental rights was in the best interest of both Nick and Sarah. Nick was "in a stable placement," and termination would enable the placement "to become a permanency option for him, whether that is permanent managing conservatorship or potential adoption in the future." Similarly, Sarah was "in a very – a loving home right now that want[s] to adopt her or be her—her permanent living situation. And [Sarah] has gotten a very strong bond with this caregiver." At the same time, Mother "has made essentially zero effort to connect with [Sarah]."

CASA volunteer Oliveira testified that he had visited Nick in his current placement and that he was "doing very well" there. Olveira acknowledged that Nick would like to have a relationship with Mother and "misses his mom, like any 10- or 11-year-old would." However, Nick "considers himself part of the family that he's in right now" and "absolutely" wants to reside permanently with that family. Oliveira testified that he has no concerns with the placement and that the placement wants to adopt Nick. Oliveira similarly testified that Sarah was "doing great" in her current placement, that Sarah "seems very happy and healthy" there, that the placement wants to adopt her, and that CASA has no concerns with the placement. Olveira believed that it was in the children's best interest to terminate Mother's parental rights and for them to remain in their current placements. He explained that the children "are in regular routines," that "[t]hey both appear happy, healthy," and that "maintaining that level of permanency is in their best long-term interest."

5

At the conclusion of trial, the district court found that termination of Mother's parental rights was in the best interest of the children and that Mother had: (1) knowingly placed and knowingly allowed the children to remain in conditions and surroundings that endangers the physical and emotional well-being of the children; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children; and (3) constructively abandoned the children. *See* Tex. Fam. Code § 161.001(b)(1)(D), (E), (N), (2). In accordance with those findings, the district court issued separate orders terminating Mother's parental rights to each child. These appeals followed.

After reviewing the entire record and the *Anders* brief submitted on Mother's behalf in each cause, we have found nothing in the record of either cause that might arguably support an appeal. We agree with counsel that each appeal is frivolous.

In each cause, we affirm the decree terminating Mother's parental rights.

_____

Gisela D. Triana, Justice

Before Justices Triana, Kelly, and Theofanis

Affirmed

Filed: March 11, 2026

6